UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
                                                                 :

FRANK HARRIS,                                      :

                              Petitioner,         :

                                                  :        04 Civ. 5066 (HB)(FM)

                  - against -            :

                                                  :        **OPINION & ORDER**

JOHN BURGE, Superintendent of Auburn,    :
Correctional Facility,                              :

                                                :

                                Respondent.     :

-----------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

Frank Harris ("Petitioner") brings this habeas corpus proceeding, pursuant to 28 U.S.C. § 2254, to challenge his conviction following a jury trial in Supreme Court, New York County, on one count each of Robbery in the First and Third Degrees and Burglary in the First Degree, two counts of Robbery in the Second Degree and three counts each of Burglary in the Second Degree and Grand Larceny in the Fourth Degree.

Petitioner claims that (1) the trial court's refusal to sever the charges and grant him separate trials constituted an improvident exercise of discretion; (2) he was deprived of effective assistance of trial counsel in violation of the Sixth Amendment; and (3) he was deprived of effective assistance of appellate counsel in violation of the Sixth Amendment. On October 29, 2007, Magistrate Judge Frank Maas issued a Report and Recommendation ("R&R"), in which he recommended that the petition be denied in all respects and that, because Petitioner had not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued. Petitioner made timely objections to the R&R ("Objections"). Upon this Court's careful review of all the submissions, the habeas corpus petition is DENIED and the R&R is adopted.

## I. BACKGROUND

Petitioner's conviction arose from his role in four robberies in Manhattan apartment buildings between May 25 and 29, 1999. The case was tried before Justice William Wetzel of the New York Supreme Court, who on November 24, 1999 sentenced Petitioner as a persistent

violent felon to a sentence of 85 years' imprisonment to life. The Appellate Division, First Department, of the State of New York affirmed Petitioner's conviction but determined that he should have been sentenced as a second felony offender, not a persistent violent felony offender. Accordingly, his sentence was reduced to an aggregate indeterminate term of 25 years to life, which Petitioner is serving at the Auburn Correctional Facility in Auburn, New York.

*The Four Robberies*

Magistrate Judge Maas found that the evidence at trial would have permitted a reasonable juror to find that Petitioner and an accomplice robbed four individuals between May 25 and 29, 1999: Susan Greaves, Paul Schweiger, Caroline Sullivan and Evelyn Sobel. R&R 3. Susan Greaves ("Greaves") was entering her apartment building on May 25, 1999, when a man rushed through the inner door behind her. Trial Tr. 31-32, 35, 54. She rode the building elevator by herself to the eighth floor, and as she reached her apartment door, the man ran toward her from the stairwell. *Id.* at 39-41, 58-60, 63-64, 68. He pushed her to the ground, "yanked" her purse from her and ran down the stairwell. *Id.* at 41-42, 63, 65, 69. Greaves immediately called "911" to report the robbery and described the assailant as a 5'7" African American male. *Id.* at 43, 65, 74-75. She later realized, however, that he was likely taller than 5'7", since she was only 5'4". *Id.* at 43, 65, 74-75. She went to the police station the night of the robbery to view a photo array but did not recognize anyone. *Id.* at 46. She identified Petitioner as her attacker during a lineup on June 7, 1999 and at trial. *Id.* at 51-53.

Paul Schweiger ("Schweiger") was followed by a man into his apartment building on May 28, 1999. *Id.* at 81-82, 86, 88-89. As Schweiger opened the inner lobby door, the man entered the lobby behind him displaying what appeared to be the blade of a retractable utility knife. The man said words to the effect of, "You know I'll do it man. Give me your wallet." *Id.* at 92. Schweiger gave the man approximately $40 and his watch, and the man fled. *Id.* at 93. Schweiger immediately called "911" and described his assailant as an African American male in his 30s, approximately 5'10" with a medium build. *Id.* at 94, 114-15. Schweiger recognized Petitioner almost immediately during a seated lineup on June 14, 1999. He asked that Petitioner stand up, and after Petitioner and each of the other men walked in front of him, Schweiger identified Petitioner as his assailant. He identified him again at the trial. *See* R&R 5.

A few hours after the Schweiger robbery on May 28, 1999, an African American male accosted Caroline Sullivan ("Sullivan") as she was leaving her apartment building in Manhattan.

*Id.* at 123-24, 127-28, 130, 153. The man pushed Sullivan back into the building and onto the floor. Sullivan reported that he was wearing a dull black jacket with yellow markings on the upper sleeves. *Id.* at 129-31, 155-56. He forcibly took her gold necklace, ripping her blouse in the process. *Id.* at 131. The man demanded that Sullivan give him her wedding band and diamond engagement ring, threatening to cut off her finger if she failed to do so. *Id.* at 132-36. The man also took Sullivan's watch, handbag, tote bag and her work cell phone and pager before fleeing. *Id.* The police showed Sullivan a photo array on June 10, 1999, which did not include a photo of Petitioner. Sullivan selected the photograph of Henry Curtle ("Curtle"), indicating that he might have been the man who attacked her. *Id.* at 158, 361. When Sullivan subsequently viewed the same lineup as Greaves on June 7, 1999, she did not identify Petitioner as her assailant. *Id.* at 359. During another lineup on July 16, 1999, which included Curtle but not Petitioner, Sullivan also was unable to identify her attacker. *Id.* at 337-38.

Finally, Evelyn Sobel ("Sobel") was about to enter her apartment building on May 29, 1999, when a man approximately 6 feet tall pushed in front of her into the building. *Id.* at 205, 229. After waiting outside for approximately ten minutes, Sobel entered the building, where she encountered the same man, who knocked her down and pulled her "fanny pack" from her waist before fleeing. *Id.* at 212, 218, 236-38. Sobel pursued him, screaming that she had been robbed. *Id.* at 212-13. Outside the building, Wilfredo Castro ("Castro") heard Sobel's call for help and followed the robber, whom he described as an African American male in his early 40s with short hair, about 5'11" tall. *Id.* at 163, 167-69, 181, 188. Castro saw the man flee in a small maroon car, which Castro reported to the police bore license plate number 2305YN. *Id.* at 169-73.

*Petitioner's Arrest and Post-Identification Admissions*

On June 7, 1999, Petitioner was apprehended in Queens, New York, while sitting in a red Volkswagen Jetta bearing license plate number Z305YW, which was registered to Petitioner's mother. *Id.* at 297-98, 383-84, 399. After arresting Petitioner, the police recovered from the vehicle Sobel's fanny pack and the black jacket with yellow markings on the upper sleeves, which Sullivan identified as the jacket worn by her assailant. *Id.* at 149-51, 222, 324-26, 438. Prior to Petitioner's arrest, the police had tracked Sullivan's cell phone to Petitioner's son, who also had Sullivan's pager in his possession when he was located. *Id.* at 144-46, 261-64, 268.

After Greaves identified Petitioner in a lineup on the date of his arrest, Petitioner waived his *Miranda* rights and spoke with detectives. He admitted his involvement in the Sobel robbery

to Detective Flanagan, stating that "when he came out, []he knew [a] guy was following him," and that he "got into his car . . . and took off." *Id.* at 432-33. Detective Flanagan reduced Petitioner's statement to a writing, which Petitioner then signed. *Id.* at 435-36. Later that night, Petitioner told the police that he had given Sullivan's cell phone to his son. *Id.* at 321-22. When the police asked about the black jacket with yellow markings recovered from his mother's car, Petitioner explained that it belonged to Curtle. *Id.* at 326, 361. He further admitted that he and Curtle had driven to Manhattan "to rob people." *Id.* at 327. Petitioner stated that Curtle instructed him to park on the FDR Drive service road, then got out of the car and returned a short time later with money, a cell phone and a pager. Thereafter, the two men drove to Brooklyn where they purchased drugs. Petitioner added that he "didn't know [Curtle] was going to rob some . . . old lady." *Id.* at 326-27.

*Pretrial Proceedings*

Prior to trial Petitioner moved to suppress his post-arrest statements to the police, the pretrial identifications of him and the property recovered from his mother's car. These motions were denied. Pretrial Hearing Tr. 182-97. Petitioner also moved prior to trial to sever the charges relating to each of the robberies pursuant to Section 220.20(3) of the New York Criminal Procedure Law ("CPL"). Decl. of Thomas B. Litsky in Opp. to Pet. for Writ of Habeas Corpus (Sept. 29, 2006) ("Litsky Decl.") Ex. A. In his motion papers, Petitioner argued that the jury would find it difficult to differentiate between a positive identification in one robbery and a confession or admission in another and to separate the evidence among robberies. *Id.* at 3. Through the affirmation of his counsel, Petitioner also contended that he "may wish to testify concerning some counts" and "to remain silent . . . on others," although neither he nor his counsel furnished any explanation for his selective invocation of his Fifth Amendment rights.

By order dated September 8, 1999, Justice Micki A. Scherer denied Petitioner's motion to sever the counts and grant him separate trials. Litsky Decl. Ex. C. In her decision, the Justice noted that "good cause may be shown where there is 'substantially more proof on one . . . offense than on others" or the defendant has made "a convincing showing that [he] has both important testimony to give on one count and a genuine need to refrain from testifying on the other." *Id.* at 1 (brackets in original). Reviewing the relevant facts, Justice Scherer found that "although the *type* of proof the People intend to offer with respect to each incident may vary, the *amount* of proof as to each incident is not disproportionate." *Id.* at 1-2 (emphasis in original).

The Justice further noted that Petitioner's "conclusory allegations" with respect to his possible desire to testify failed to show that he had "important testimony to give" concerning statements he allegedly made and "a genuine need to refrain from testifying" regarding incidents for which he had not made incriminating statements." *Id.* at 2.

Petitioner did not testify or present any other evidence as part of a defense case. *See* Trial Tr. 482.

### Jury Charge and Deliberations

Justice Wetzel's jury charge generally set forth the elements that the jury would have to find beyond a reasonable doubt to find Petitioner guilty as a principal for the Greaves, Schweiger and Sobel robberies. With respect to the Sullivan robbery, the Justice instructed the jury as to the findings it would need to make to hold Petitioner liable as an accomplice. Trial Tr. 595-602. Petitioner's counsel did not object to this or any other aspect of the jury charge. *See id.* at 607. During its deliberations, the jury sent Justice Wetzel several notes requesting the court to clarify the date of each robbery, to read back a police officer's testimony concerning Petitioner's post-arrest admissions regarding the Sullivan robbery and to provide clarification concerning the elements of accomplice liability. *Id.* at 617-20.

### Verdict and Sentence

After trial on October 27-28 and November 1, 1999, the jury deliberated and convicted Petitioner on all eleven counts presented for its consideration on November 3, 1999. *See id.* 621-22. On November 24, 1999, Justice Wetzel determined that Petitioner's prior convictions classified him as a persistent violent felon under Sections 70.04 and 70.08 of the New York Penal Law and sentenced Petitioner to an aggregate indeterminate term of 85 years to life in prison. Sentencing Tr. 3, 16.

### Direct Appeal

Petitioner appealed his conviction to the New York Appellate Division, First Department, on three grounds. *See* Litsky Decl. Ex. D. First, he argued that the denial of his motion to sever the charges constituted an "improvident exercise of discretion." *Id.* at 25-31. Second, he claimed that his trial counsel was ineffective because he (1) failed to highlight the major discrepancies in the heights of the participants in the Schweiger lineup; (2) failed to object to a portion of the prosecutor's summation that improperly bolstered Greaves' identification testimony; (3) failed to object to the admission of hearsay evidence concerning the Sullivan

robbery; (4) failed to object to (or impeach) Sobel's "surprise" identification of him at trial; (5) failed to move to preclude the items in Sobel's fanny pack that Sobel testified at trial did not belong to her; and (6) permitted the prosecutor to suggest to the jury that Petitioner would have confessed to the Schweiger robbery had he not been represented by counsel. *Id.* at 31-43. Petitioner also claimed that his sentence was unduly severe and had been improperly enhanced based on factual findings made by the court, rather than the jury. *Id.* at 43-45.

On April 8, 2003, the New York Appellate Division, First Department, unanimously affirmed Petitioner's conviction and held that the denial of severance was not an abuse of discretion and Petitioner was not denied effective assistance of counsel. Specifically, the court held that the counts were properly joined under CPL 200.20(2)(c) and Petitioner did not establish good cause for severance. *People v. Harris*, 304 A.D.2d 355, 356 (N.Y. App. Div. 2003) ("[T]he People's evidence regarding each incident was equally strong and the incidents could be easily separated in the minds of the jurors. . . . Furthermore, defendant failed to make a convincing showing that he had important testimony to give concerning some counts and a strong need to refrain from testifying as to others."). Moreover, the New York Appellate Division held that Petitioner failed to show "the absence of strategic or other legitimate explanations" for counsel's conduct, or that counsel's purported errors deprived Petitioner of a fair trial or affected the result. *Id.* (quoting *People v. Rivera*, 71 N.Y.2d 705, 709 (N.Y. 1988); citing *People v. Hobot*, 84 N.Y.2d 1021, 1024 (N.Y. 1995)). The court held that Petitioner's claim that the procedure by which he was sentenced was unconstitutional was unpreserved and lacked merit. *People v. Harris*, 304 A.D.2d at 356.

The New York Appellate Division, however, also held that Petitioner could not properly be sentenced as a persistent violent felony offender and modified Petitioner's sentence both "on the law," because he should have been sentenced as a "second felony offender," and "as a matter of discretion in the interest of justice." Pursuant to the modifications, Petitioner is serving concurrent sentences that in the aggregate amount to an indeterminate sentence of 25 years to life. *Id.* at 355-56.

Petitioner sought leave to appeal to the New York Court of Appeals, but on July 8, 2003, that application was denied. *People v. Harris*, 100 N.Y.2d 582 (N.Y. 2003).

### *Petition for Writ of Error Coram Nobis*

On July 18, 2005, Petitioner filed a *coram nobis* petition in the New York Appellate

Division, First Department, alleging his appellate counsel was ineffective. Litsky Decl. Exs. H, I. Petitioner asserted that his appellate counsel failed to argue that (1) the indictment was insufficient with respect to the charges arising out of the Sullivan robbery because it did not specify that Petitioner had acted as an accomplice; (2) Petitioner had not been positively identified as the individual who robbed Sobel and Sullivan; and (3) Petitioner's conviction was unconstitutional because the trial court and prosecutor failed to inform him that he "has the right to contest the validity of his previous convictions." *Id.* The New York Appellate Division denied his petition on February 2, 2006. Litsky Decl. Ex. K. Thereafter, the New York Court of Appeals denied his leave to appeal on May 16, 2006. Litsky Decl. Exs. L, M.

*Federal Habeas Petition*

Petitioner timely filed his original habeas petition on June 28, 2004. On August 25, 2004, this Court granted Petitioner a stay so that he could exhaust his ineffective assistance of appellate counsel claim in state court. Petitioner filed his amended Petition on May 31, 2006, in which he reasserted two of the three grounds that he raised on direct appeal: that the trial court improvidently exercised its discretion by denying Petitioner's severance motion and that he was deprived of effective assistance of trial counsel. Specifically, the amended Petition claims that Petitioner's trial counsel was ineffective because he (1) failed to draw the jury's attention to the major discrepancies in the heights of participants in the lineup that resulted in Schweiger's identification of him; (2) failed to object to a portion of the prosecutor's summation that improperly bolstered Greaves' eyewitness identification[1]; (3) failed to make a timely motion to exclude items in Sobel's "fanny pack" that did not belong to her; (4) improperly allowed the prosecutor to argue that Petitioner would have confessed to the Schweiger robbery had he not been represented by counsel; (5) failed to challenge the indictment as defective because it did not charge Petitioner under New York Penal Law § 20.00, "criminal liability for conduct of another," even though an acting-in-concert theory was presented to the jury; (6) failed to emphasize that Sobel testified at trial that she could not positively identify anyone in the lineup as the person who robbed her; and (7) failed to emphasize that Sullivan never positively identified Petitioner as the person who assailed her. Pet. ¶¶ 15.B-F.

---

[1] Petitioner's Petition refers to the prosecutor's summation that bolstered Sullivan's, and not Greaves', identification. Pet. ¶ 15.B. However, this appears to have been a clerical error, as Petitioner's direct appeal in state court referred to Greaves and not Sullivan in this context. Indeed, in his R&R Magistrate Judge Maas discusses Petitioner's claim that the prosecutor's summation improperly bolstered Greaves' identification, and not Sullivan's.

The Petition also raises the ineffective assistance of appellate counsel claim set forth in Petitioner's *coram nobis* application. Litsky Decl. Ex. O, Pet.'s "Supplementary Brief," at 2.

Respondent submitted a memorandum of law and declaration in opposition to the Petition on September 29, 2006. In an "Affirmation in Response to District Attorney's Responding Motion," dated October 5, 2006, Petitioner argued that the Respondent's papers in opposition to his Petition opened the door to his raising an issue of first impression. Specifically, Petitioner argued that the trial court "reduced" certain of the charges in the indictment in a manner that rendered them "[i]nconsistent, . . . factuall[y] incorrect[,] and repugnant." *See* R&R 14.

This Court referred the Petition to Magistrate Judge Frank Maas, who issued a Report and Recommendation on October 29, 2007, recommending that this Court deny the Petition.

On November 26, 2007, Petitioner submitted his Objections to the R&R and requested, for the first time in his papers, an evidentiary hearing. Further, on December 24, 2007, Petitioner asked this Court for permission to expand the record as it related to the ineffective assistance of counsel claim, arguing that he was never charged with an indictment at all, and requested an evidentiary hearing. This Court denied Petitioner's request by an Order dated January 8, 2008, noting that Petitioner was "simply out of time at this point to expand [his] record or have an evidentiary hearing."[2]

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Those parts of the Magistrate Judge's report and recommendation to which specific objections are made must be reviewed *de novo*. 28 U.S.C. § 636(b)(1); *see Singleton v. Davis*, No. 03 Civ. 1446, 2007 WL 152136, at *1 (S.D.N.Y. Jan. 28, 2007). Such a determination must be made based on a review of the "[r]eport, the record, applicable legal authorities, . . . [and] Plaintiff's and Defendant's objections and replies." *Diaz v. Girdish*, No. 04 Civ. 5061, 2007 WL 187677, at *1 (S.D.N.Y. Jan. 23, 2007) (quoting *Bandhan v. Lab. Corp. of Am.*, 234 F. Supp. 2d 313, 316 (S.D.N.Y.

---

[2] Petitioner's claim, raised for the first time in December 2007, was both without merit and unexhausted in the state courts. The gravamen of Petitioner's new claim was that the indictment was invalid against him because, although his name appeared at the top in the "caption," the counts enumerated in the indictment itself referred only to the "defendant" and not to Petitioner by name. Clearly, an indictment is valid against a defendant if the defendant's name appears in the caption, even if the defendant is thereafter referred to as "defendant" and not by name. Finally, Petitioner had not exhausted his claim in state court, as has long been required by the United States Supreme Court. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9 (1992) (citing *Ex parte Royall,* 117 U.S. 241 (1886)).

2002)).  However, to the extent a petition makes only general and conclusory objections to the magistrate judge's report and recommendations, or simply reiterates the original arguments, the district court will review the report and recommendations strictly for clear error.  *Singleton*, 2007 WL 152136, at *1.

Construing Petitioner's Objections liberally, this Court finds that they do not mention Petitioner's claims that (1) the trial court's refusal to sever the charges and grant him separate trials constituted an improvident exercise of discretion, (2) his appellate counsel was ineffective, (2) his trial counsel was ineffective because he failed to draw the jury's attention to major discrepancies in the heights of participants in the lineup that resulted in Schweiger's identification of him, (3) his trial counsel was ineffective because he failed to make a timely motion to exclude items in Sobel's "fanny pack" that did not belong to her, or (4) his trial counsel was ineffective because he improperly allowed the prosecutor to argue that Petitioner failed to confess to one of the robberies because he was represented by counsel.  The Objections only mention in a general and conclusory manner Petitioner's claims that (1) his trial counsel was ineffective because he failed to challenge the indictment as defective because it did not charge Petitioner under New York Penal Law § 20.00 ("criminal liability for conduct of another") and (2) his trial counsel was ineffective because he failed to object to a portion of the prosecutor's summation that improperly bolstered Greaves' eyewitness identification. Therefore, this Court reviews Magistrate Judge Maas's recommendations as to these six claims for clear error.

Construing Petitioner's Objections liberally, this Court finds that they make specific objections with respect to Petitioner's claims that his trial counsel was ineffective because he (1) failed to emphasize that Sobel testified at trial that she could not positively identify anyone in the lineup as the person who robbed her; and (2) failed to emphasize that Sullivan never positively identified Petitioner as the person who assailed her.  Therefore, I review these two claims *de novo*.

### III. DISCUSSION

**A.     Claim That Trial Court's Refusal to Sever Charges and Grant Separate Trials Constituted Improvident Exercise of Discretion**

As explained above, I review for clear error Judge Maas's recommendation to deny Petitioner's claim that the trial court's refusal to sever the charges against him and grant separate

trials on each charge constituted an improvident exercise of discretion. Magistrate Judge Maas found that the joinder of offenses was consistent with CPL § 200.20(2)(c), which provides that a single indictment may charge two or more offenses based upon different criminal transactions if "such offenses are defined by the same or similar statutory provisions and consequently are the same or similar in law," because the offenses were all defined by the similar statutes criminalizing robbery, burglary and grand larceny. R&R 17-18. Magistrate Judge Maas also found that Petitioner could not demonstrate actual prejudice because, although each of the four robberies involved similar facts and could have caused the jurors to view the evidence against Petitioner in a cumulative manner, there was no showing that they *actually* did so. *Id.* 18.

Justice Wetzel instructed the jury "to consider the[] 11 counts separately," "to review the evidence only as it pertains to a particular count," not to "use the evidence that might relate to one count as proof of another count," and "to apply the evidence strictly to the count where it was relevant." R&R 18 (citing Trial Tr. 603). The jury must be presumed to have followed these instructions. R&R 19 (citing *Spencer v. Texas*, 385 U.S. 554, 562 (1967); *Herring v. Meachum*, 11 F.3d 374, 378 (2d Cir. 1993)). Magistrate Judge Maas further pointed out that the notes sent by the juror suggested a factual basis for the presumption that they followed the trial court's instructions. R&R 19. He concluded that "Harris has failed to show 'an overwhelming probability' that the jury was unable to follow the judge's instructions to consider each charge separately." *Id.* (quoting *Rolling v. Fischer*, 433 F. Supp. 2d 336, 344 (S.D.N.Y. 2006) (quotation marks and citation omitted)).

The joinder of offenses for trial is a matter of state law, and federal habeas corpus relief does not extend to mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). However, under the Due Process Clause of the United States Constitution, state courts must "proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice'" during a criminal trial. *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). A federal habeas court may correct an error of state law that rises to the level of a constitutional violation, but even such an error will merit habeas corpus relief only if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1992) (quotation marks and citation omitted).

By reason of the foregoing, I find no clear error in Magistrate Judge Maas's recommendation that this Court deny Petitioner's claim that the trial court's refusal to sever the charges against him and grant separate trials on each charge constituted an improvident exercise of discretion, and this claim must be denied.

**B.      Claim That Trial Counsel Was Ineffective**

*Magistrate Judge's Recommendations Subject to Review for Clear Error*

Magistrate Judge Maas found that Petitioner's trial counsel was not ineffective for failing to point out discrepancies in the height of the participants in the lineup that resulted in Schweiger's identification of him.  R&R 22.  The hearing transcript confirms that, like Petitioner, the fillers in the lineup each had facial hair and ranged in age from 34 to 39 years old, weighed between 180 and 218 pounds and were between 5'5" and 6'3" tall.  Pretrial Hearing Tr. 141.  In his brief on appeal, Petitioner indicated that three of the fillers were between 6' and 6'3" tall.  Litsky Decl. Ex. D at 35.  Magistrate Judge Maas found that the police's arrangement to have Schweiger view the lineup participants while they were seated minimized the height differences.  R&R 21.  Therefore, and in light of Magistrate Judge Maas's observation that Schweiger testified that he recognized Petitioner immediately and only asked that he stand up before making an identification to make sure, Magistrate Judge Maas did not clearly err.  *See* R&R 21 (citing Trial Tr. 100-01).

Magistrate Judge Maas found that Petitioner's trial counsel was not ineffective for failing to make a timely motion to exclude items in Sobel's "fanny pack" that did not belong to her. R&R 27.  First, Petitioner's trial counsel did seek to suppress the fanny pack and its contents on the ground that the police had unlawfully seized these items, but that motion was denied.  Pretrial Hearing Tr. 161-62.  At trial, Sobel testified that only two items in the fanny pack (two small hearing aid batteries) belonged to her.  Trial Tr. 223-24.  Petitioner's counsel then moved for a mistrial.  Justice Wetzel denied the motion but provided a cautionary instruction when the items were shown to the jury again during the testimony of the police detective who seized them.  *Id.* at 440.  The additional items in the fanny pack that did not belong to Sobel were a "Lord and Taylor box," a "change purse," a "[s]et of keys," two "[s]crap[s] of paper," and Petitioner's mother's registration for the vehicle in which Petitioner was seated shortly before his arrest.  *Id.* at 223-24.  Magistrate Judge Maas found that Petitioner "fail[ed] to explain . . . why his attorney should have concluded that any items other than the registration did not belong to Sobel before

she testified to that effect at trial. Indeed, on his direct appeal, Harris impliedly conceded that these items could have belonged to anyone." R&R 26 (citing Litsky Decl. Ex. D at 42). As to the vehicle registration, Magistrate Judge Maas found that "[s]ince the presence of the registration inside Sobel's fanny pack strongly suggested that Harris had exercised dominion and control over the fanny pack at some point prior to his arrest, it plainly was relevant to the charges arising out of the Sobel robbery." R&R 26-27. Moreover, the limiting instruction by the trial court advised the jury that it could not consider why any of the items in the bag other than the hearing aid batteries "happened to be in the bag." In light of the foregoing, this Court finds no clear error in Magistrate Judge Maas's recommendation that this Court deny Petitioner's claim that his trial counsel was ineffective for failing to make a timely motion to exclude items in Sobel's fanny pack.

Magistrate Judge Maas found that Petitioner's trial counsel was not ineffective for failing to object when the prosecutor argued to the jury in summation that the presence of Petitioner's counsel during his post-arrest question was the only reason that Petitioner did not confess to the Schweiger robbery. R&R 31. Magistrate Judge Maas pointed out that in reality the prosecutor argued during summation that the police did not *question* Petitioner about the Schweiger robbery because "once [Petitioner] had an attorney, Detective Flanagan [knew] that he [could not] question him." R&R 28 (quoting Trial Tr. 564). As a general rule, the prosecution may not use a criminal defendant's post-arrest silence to impeach him. *See Greer v. Miller*, 483 U.S. 756, 762-63 (1987) ("[I]t does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony."). Magistrate Maas found that this "plainly was not the thrust of the prosecutor's remark. Rather, the prosecutor was simply trying to explain why Detective Flanagan did not question Harris about the Schweiger robbery." R&R 29. The testimony merely indicated that Detective Flanagan chose not to speak to Petitioner about the Schweiger robbery because Petitioner had been arraigned and assigned counsel before the Schweiger robbery was assigned to him. R&R 30 (citing Trial Tr. 464). Magistrate Judge Maas concluded that in light of Schweiger's identification of Petitioner as his assailant both at a lineup and at trial, and Petitioner's admission that he went to Manhattan to rob people, "there is no reason to believe that the outcome of Harris's trial would have been any

different had the prosecutor not addressed Detective Flanagan's failure to question Harris about the Schweiger robbery." R&R 31. Therefore, I find no clear error in Magistrate Judge Maas's recommendation that this Court deny Petitioner's claim that his trial counsel was ineffective for failing to object to the prosecution's argument in summation.

In his R&R Magistrate Judge Maas did not address Petitioner's claims that his trial counsel was ineffective because he failed to challenge the indictment as defective for not charging Petitioner as an accomplice in the Sullivan robbery. Magistrate Judge Maas did, however, address Petitioner's claim that his *appellate counsel* was ineffective for this same failure. He noted that Petitioner "contends that there was a fatal variance between the indictment and the trial proof because he was prosecuted as an accomplice in connection with the Sullivan robbery although the indictment charged him as a principal." R&R 32-33. However, as Magistrate Judge Maas observes, under New York law, the "fact that an indictment accuses a defendant as a principal does not preclude his conviction as an accessory and a [jury] charge based on accessorial conduct is not grounds for reversal." *Mercado v. Stinson*, 37 F. Supp. 2d 267, 278 (S.D.N.Y. 1999) (internal citation omitted). Therefore, the Magistrate Judge's conclusion that although Petitioner was charged as a principal, the trial court properly instructed the jury with respect to accomplice liability in connection with the charges arising out of the Sullivan robbery is not clear error, and this claim must be denied. *See* R&R 33; Trial Tr. 598.

Finally, Magistrate Judge Maas did not clearly err when he found that Petitioner's trial counsel was not ineffective for failing to object to a portion of the prosecutor's summation that improperly bolstered Greaves' eyewitness identification. Specifically, in his summation the prosecutor suggested to the jury that Greaves had told Detective DiPaolo that her attacker was "six feet tall." R&R 23 (quoting Trial Tr. 534-35). Magistrate Judge Maas noted that it is undisputed that there was no such testimony at trial and that Petitioner's counsel did not object to this mischaracterization of the record. *Id.* Nevertheless, he found that counsel's error, if any, did not rise to the level of ineffective assistance because, *inter alia*, once Greaves calmed down after the robbery she realized that her description of her attacker in her "911" call was incorrect and "he was actually taller than 5'7" since [she is] only 5'4"," and she identified Petitioner as her attacker both in a lineup and in open court. R&R 23-24 (citing Trial Tr. 75). Magistrate Judge Maas reasoned that

[a]lthough Greaves never testified about the exact physical description she

provided to the police two days after the robbery, it was a fair inference from the evidence that her description was consistent with her trial testimony. The fact that the jury never heard her so testify therefore is a nuance that even the most astute lawyer might have missed in the heat of trial. Moreover, Harris's trial counsel may not have missed the error, but simply have chosen not to highlight it through an objection which would have caused the prosecutor to reemphasize Greaves' level of certainty during both the lineup and trial that it was Harris who attacked her.

R&R 24. This Court finds that Magistrate Judge did not clearly err and therefore Petitioner's claim that his trial counsel was ineffective for failing to object to a portion of the prosecutor's summation that improperly bolstered Greaves' eyewitness identification is denied.

### *Recommendations Subject to De Novo Review*

To prevail on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must prove that (1) counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms" (the performance prong); and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the prejudice prong). *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court may address the performance and prejudice prongs of *Strickland* in either order, but "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Generally, an attorney's strategic choices formed after a thorough investigation of the facts and law are "virtually unchallengeable," but those "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

Petitioner specifically objected to the Magistrate Judge's recommendations with respect to his claims that his trial counsel was ineffective because he (1) failed to emphasize that Sobel testified at trial that she could not positively identify anyone in the lineup as the person who robbed her, and (2) failed to emphasize that Sullivan never positively identified Petitioner as the person who assailed her. I review these claims *de novo*.

Both claims are easily resolved. As Judge Maas noted, with respect to the lack of positive identification by Sobel, Petitioner "overlooks the fact that the police recovered Sobel's fanny pack from his mother's car and that he confessed to the crime. Moreover, Castro recorded

the license plate number of the vehicle Sobel's attacker used to flee the scene (2305YN), which closely corresponded to the actual plate number of Harris's mother's car (Z305YW). Therefore, the evidence was more than sufficient for the jury to find Petitioner guilty of the charges with respect to the Sobel robbery.

With regard to the lack of positive identification by Sullivan, as discussed above, the jury found that Petitioner aided and abetted Curtle in committing the Sullivan robbery, and the prosecution never advanced during trial that Petitioner was Sullivan's attacker. In fact, it was undisputed that Petitioner was parked on the opposite side of the FDR Drive service road at the time Curtle was committing the robbery.

Therefore, neither claim meets the prejudice prong of the *Strickland* test because there is no "reasonable probability" that, even if Petitioner's counsel was ineffective, the result of the proceeding with respect to the Sobel and Sullivan robberies would have been different. *See Strickland*, 466 U.S. at 694. Petitioner's claim that he was deprived of ineffective assistance of trial counsel must be denied.

## C.    Claim That Appellate Counsel Was Ineffective

Petitioner claims that his appellate counsel was ineffective because he failed to argue that (1) the indictment was insufficient with respect to the charges arising out of the Sullivan robbery because it did not specify that Petitioner had acted as an accomplice; (2) Petitioner had not been positively identified as the individual who robbed Sobel and Sullivan; and (3) Petitioner's conviction was unconstitutional because the trial court and prosecutor failed to inform him that he had the right to contest the validity of his previous convictions. I have already addressed the first and second claims above, as Petitioner made the same claims with respect to his trial counsel's effectiveness, and therefore I find no clear error in the R&R with respect to them. As to the third claim—that appellate counsel was ineffective because he failed to argue that the trial court and prosecutor should have informed Petitioner of the right to contest the validity of his prior convictions—this Court also finds no clear error in the Magistrate Judge's R&R.

Magistrate Judge Maas observes that, contrary to Petitioner's assertion, the trial record shows that Justice Wetzel advised Petitioner before sentence was imposed that he had a right to challenge his prior convictions on constitutional grounds. R&R 34-35 (citing Sentencing Tr. 3). Therefore, Magistrate Judge Maas did not clearly err when he found that "[t]he issues that Harris believes should have been raised as part of his direct appeal were therefore neither meritorious

nor significantly more likely to result in the reversal of his conviction," and Petitioner's claim that his appellate counsel was ineffective must be denied.

**D.      Petitioner's Request for Evidentiary Hearing**

Under 28 U.S.C. § 2254(e)(2), if a habeas petitioner has failed to develop the factual basis of a claim in state court proceedings, the federal court shall not hold an evidentiary hearing unless the petitioner shows (1) that the claim relies on a new rule of constitutional law that has been made retroactive to cases on collateral review or a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. In other words, a petitioner is not entitled to produce new evidence or have an evidentiary hearing in federal court on the merits of his case if he or she "has failed to develop the factual basis of a claim in State court proceedings," as a result of his or her own fault and lack of diligence. 28 U.S.C. § 2254(e)(2); *see also Williams v. Taylor*, 529 U.S. 420, 421 (2000).

In *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-10 (1992), the United States Supreme Court overruled *Townsend v. Sain*, 372 U.S. 293 (1963), on which Petitioner relies, and held that the cause-and-prejudice standard, rather than the deliberate bypass standard, is the correct standard for excusing a habeas petitioner's failure to develop a material fact in state court proceedings. That is, a petitioner is entitled to an evidentiary hearing if he or she can show cause for his or her failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure. *Id.* at 11-12. The Court explained that "[a]pplying the cause-and-prejudice standard in cases like this will obviously contribute to the finality of convictions, for requiring a federal evidentiary hearing solely on the basis of a habeas petitioner's negligent failure to develop facts in state-court proceedings dramatically increases the opportunities to relitigate a conviction." *Id.* at 8-9. Further, "ensuring that full factual development of a claim takes place in state court . . . is fully consistent with, and gives meaning to, the requirement of exhaustion." *Id.* at 9.

Here, Petitioner never requested an evidentiary hearing in his direct appeal to the New York Appellate Division or in his petition for writ of error *coram nobis*, nor did he request an evidentiary hearing in his federal habeas petition. Petitioner has not shown any cause for this failure to develop the record by requesting an evidentiary hearing in state court. Petitioner also

has not met the second prong of 28 U.S.C. § 2254(e)(2) because he has not shown that the facts underlying his claims would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. Therefore, Petitioner's request for an evidentiary hearing at this late stage is denied.

E.     **Lesser Included Offense Claim**

Magistrate Judge Maas also addressed Petitioner's "last contention, improperly raised for the first time in his reply affirmation," that the count of Burglary in the Second Degree in the indictment constituted a lesser included offense of the Robbery in the Third Degree in the indictment. R&R 35. This Court agrees with the Magistrate Judge that Petitioner's argument fails because it is unexhausted and procedurally barred in the New York courts, and because Burglary in the Second Degree is not a lesser included offense of Robbery in the Third Degree, as the two crimes have different elements. Therefore, Petitioner's lesser included offense claim must also be denied.

## IV. CONCLUSION

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Frank Maas is adopted in all respects and the petition for writ of habeas corpus is DENIED. Further, Petitioner's request for a certificate of appealability is DENIED because Petitioner has made no showing of a denial of a federal right, and thus appellate review is inappropriate.

The Clerk of Court is instructed to close this case and remove it from my docket.

**IT IS SO ORDERED.**
New York, New York
March 15, 2008

_____
U.S.D.J.